09-3527.101-JCD                                            May 19, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PENNY VERKUILEN,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 09 C 3527
                                    )
MEDIABANK, LLC, JOHN BAUSCHARD,     )
and LINDA BRZEZINSKI,               )
                                    )
          Defendants.               )

### MEMORANDUM OPINION

     Before the court are the parties' cross-motions for summary
judgment.  After hearing oral argument and considering the briefs,
we have decided to deny plaintiff's motion and grant defendants'
motion, for the reasons explained below.

### BACKGROUND

     Plaintiff Penny Verkuilen was employed by defendant Mediabank,
LLC ("Mediabank") from July 23, 2007 to March 20, 2009.  She sues
Mediabank for unpaid overtime wages under the Fair Labor Standards
Act (the "FLSA"), 29 U.S.C. § 201 et seq.  Also named as defendants
are Mediabank's Chief Operating Officer, John Bauschard, and its
Vice President of Operations, Linda Brzezinski, on the theory that
they are also "employers" under the FLSA because they had
supervisory authority over plaintiff and were at least partially
responsible for the violation.

- 2 -

The parties have filed cross-motions for summary judgment. Because they are mirror images, we will consider them together.  At issue is whether the FLSA exempts Verkuilen from eligibility for overtime under the "administrative employee" and "computer employee" provisions.[1]

**DISCUSSION**

**A.   Summary Judgment Standards**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  "Summary judgment should be denied if the dispute is 'genuine':  'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the

---

[1]   The burden is on the employer to prove by a preponderance of the evidence that an employee is exempt under the FLSA.  Yi v. Sterling Collision Ctrs., Inc., 480 F.3d 505, 507-08 (7th Cir. 2007).

finder of fact to find in [its] favor on a material question."
<u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).  Once the
moving party has supported its motion for summary judgment, the
"opposing party may not rely merely on allegations or denials in
its own pleading; rather, its response must--by affidavits or as
otherwise provided in [Rule 56]--set out specific facts showing a
genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

**B.   <u>Relevant Facts</u>**

The following facts are undisputed.  Mediabank is a company
that provides software and services to clients in the advertising
industry.  Verkuilen worked as an Account Manager for Mediabank.
In this role, she provided software support services for
Mediabank's clients, acting as a liaison between those clients and
Medibank's programmers and software developers.  Verkuilen assisted
clients in using Mediabank's software.  When clients experienced
problems, Verkuilen attempted to reproduce the problem and, if
possible, explain to the client how to use the software properly.
If software or hardware changes were required to resolve a problem,
Verkuilen explained the problem to Mediabank's developers, who
would then make the necessary changes for Medibank's product to
meet the client's requirements.  For a period of time, Verkuilen
provided on-site support to certain Medibank clients in Chicago,
Atlanta, and Los Angeles.  While on site, plaintiff responded to
questions from the clients' employees regarding how to use

- 4 -

Mediabank's software.  During this period, plaintiff also assisted new employees at Mediabank in using the software.  During another portion of her employment, Verkuilen conducted software training sessions at the offices of Mediabank's clients.

Mediabank's written description for Verkuilen's position states that the "Account Manager manages [the] relationship with clients - everything from day-to-day information requests, to in-depth analysis, to contract renewal negotiations, training and support needs." (Pl.'s Mem. in Supp. of Mot. for S.J., Ex. J.)  It lists several responsibilities, including:

- respond[ing] to client inquiries, resolv[ing] service issues, and demonstrat[ing a] proactive, solution-based approach to enhance client relations
- responsible for the quality control and timely delivery of client work, including final review of all data updates and plan sponsor and participant reporting as a result of daily activity
- interpreting and resolving user questions concerning system use
- creat[ing] training plans
- conducting user training[]
- creat[ing] agendas
- testing software applications
- writing software documentation, creat[ing] function specs, creat[ing] training materials and agendas
- understand[ing] internal software applications, client issues and writ[ing] appropriate system functional specifications
- handl[ing] support calls and exercis[ing] independent judgment to determine issue and resolution
- determin[ing] if issue is a bug, information request, system enhancement, etc. and manag[ing] process to resolution
- identify[ing]/implement[ing] opportunities for increased operational efficiencies with clients' plans to enhance client service delivery
- work[ing] with staff to ensure accurate and timely updates

- identify[ing] billable services and effectively communicat[ing] to client

(Id.)  At her deposition, plaintiff admitted that her job duties were, for the most part, consistent with the written job description.  She disputed having been responsible for quality control.  She also disputed that she tested software applications, stating, "I wouldn't say that I tested it.  I would say I played with it."  (Defs.' Mem. in Supp. of Mot., Ex. C, Dep. of Penny Verkuilen, at 190.)  She stated that she "[didn't] know" that she had identified opportunities for increased operational efficiencies, but that she had been involved in the operational efficiencies of Mediabank's software as it pertained to users. (Id. at 191.)  And she stated that she did not identify billable services and communicate that to the client.  She conceded that the remaining items were part of her responsibilities and duties.  (Id. at 192-93.)

The "required skills" listed in the job description are the following:

- BA/BS with background in marketing/market research
- Strong analytical and computer skills including experience with Excel and Microsoft Word
- Experience with Microsoft Office package
- Outstanding communication, interpersonal, and client management skills
- Expertise in one or more of the following: spot, network, print media, interactive media, direct response, agency finance
- Advertising background
- Business Analyst skills
- Quality Assurance skills

- 6 -

- A working knowledge of the planning, buying and/or financial process is beneficial
- Excellent written and verbal skills
- Prior experience with agency system(s) or related software
- Ability to travel to client sites for training
- Exercise independent judgment to determine issue and resolution
- Independent thinker
- Excellent follow through skills
- Ability to identify root cause and provide solution

(Pl.'s Mem. in Supp. of Mot., Ex. J.)

## C.    **Administrative Employee Exemption**

The FLSA exempts from overtime pay coverage those employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The relevant regulation sets forth a three-part test for determining whether an employee falls under this exemption. First, the employee must be compensated on a salary or fee basis at a rate of not less than $455 per week. 29 C.F.R. § 541.200(a)(1). This requirement is not in dispute; Verkuilen's earnings exceeded the threshold amount. The second and third requirements, however, are in dispute.

The second requirement is that the employee's primary duty must be the performance of office or non-manual work "directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). To meet this test, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing

- 7 -

production line or selling a product in a retail service establishment." 29 C.F.R. § 541.201(a).

Verkuilen's primary duty was to act as a liaison between Mediabank and its customers, facilitating the customers' use of Mediabank's software. It was undoubtedly "office or non-manual work." The question is whether the work was directly related to assisting with the running or servicing of Mediabank's business. Plaintiff contends that it was not because in her role as liaison, she acted on the "front line" as a "quarterback" between Mediabank and its clients and therefore was akin to an employee on a production line. Defendant argues that plaintiff's work was directly related to the operation of Mediabank's business because plaintiff was not involved in the production of Mediabank's software; rather, she interacted with clients on a daily basis, helping them use and understand the software, and advised Mediabank about the clients' businesses and needs.

The facts of this case are similar to those in Haywood v. North American Van Lines, Inc., 121 F.3d 1066 (7th Cir. 1997), in which Haywood, a customer service coordinator for a shipping company, was found to be an exempt administrative employee. Haywood was responsible for resolving customers' billing, damage, and delay claims, and her primary role was to ensure quality service and prevent customer dissatisfaction. 121 F.3d at 1068. She was often the "sole contact" between her employer and its

customers.  Id. at 1072.  The Seventh Circuit concluded that Haywood's representation of her employer in its discussions with customers was a "classic administrative function," and rejected the suggestion that she was involved in production, explaining that her negotiation duties were ancillary to the employer's business of moving goods from one location to another.  Id.

Like Haywood, Verkuilen represented her employer in its relationships with customers, responding to customers' questions and resolving problems with the product.  The essence of Verkuilen's job was keeping the clients happy.  She did not create or modify the software; rather, she assisted in the servicing of Mediabank's business. Her duties satisfy the second requirement of the administrative employee exemption.

The third requirement of the exemption is that the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(3).  "[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R. § 541.202(c).  "The term 'matters of

significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).

Plaintiff submits that she does not meet this requirement because she merely assisted clients with resolving issues with the software; if changes to the software were necessary, she was required to refer the issue to Mediabank's software developers.  In addition, plaintiff argues that she had numerous supervisors throughout her tenure at Mediabank, she did not write Mediabank's policies, and she could not bind the company financially. Defendant asserts that Verkuilen's description of herself as a "quarterback" on the "front line" actually weighs in defendants' favor.  When confronted with a client's problem in using Mediabank's software, Verkuilen exercised discretion and independent judgment in determining the nature of the problem and how to handle it--whether it was an issue with the software training of the client's employees, or an issue with the functioning of Mediabank's software that had to be referred to a software developer.

We agree with defendants.  Verkuilen acknowledged that when a customer had a problem, she would decide whether it was something she could resolve on her own by giving the client further instruction or whether it was a matter for referral to developers. (Defs.' Mem. in Supp. of Mot., Ex. C, Verkuilen Dep. at 97-99.) Thus, she compared and evaluated possible courses of conduct and

made a decision after considering the possibilities.  She also
conducted training sessions and modified user manuals for clients.
All of these duties involved the use of discretion and independent
judgment; that she had multiple supervisors who reviewed her work
and that she lacked authority to bind the company financially and
write its policies does not change that conclusion.  Furthermore,
Verkuilen used her discretion and independent judgment in regard to
matters of significance; she served as a primary customer contact
for a number of clients, and the decisions she made about how to
handle their software problems affected Mediabank's relationships
with its customers.

Because plaintiff was compensated on a salary or fee basis at
a rate of not less than $455 per week, her primary duty was the
performance of office or non-manual work directly related to
Mediabank's general business operations, and her primary duty
included the exercise of discretion and independent judgment with
respect to matters of significance, we hold that she was an exempt
administrative employee.

**D.   Computer Employee Exemption**

Defendants assert that Verkuilen was exempt from overtime pay
because she was also a "computer employee."  This exemption applies
to

> any employee who is a computer systems analyst, computer
> programmer, software engineer, or other similarly skilled
> worker, whose primary duty is--

(A) the application of systems analysis techniques and
procedures, including consulting with users, to determine
hardware, software, or system functional specifications;
(B) the design, development, documentation, analysis,
creation, testing, or modification of computer systems or
programs, including prototypes, based on and related to
user or system design specifications;
(C) the design, documentation, testing, creation, or
modification of computer programs related to machine
operating systems; or
(D) a combination of duties described in subparagraphs
(A), (B), and (C) the performance of which requires the
same level of skills, and
who, in the case of an employee who is compensated on an
hourly basis, is compensated at a rate of not less than
$27.63 an hour.

29 U.S.C. § 213(a)(17). Regarding the first requirement,
defendants conceded at oral argument that Verkuilen was not a
computer systems analyst, computer programmer, or software
engineer; they hung their hat on an undeveloped argument that
Verkuilen was "similarly skilled." The evidence is to the
contrary. Verkuilen did not have skills similar to that of any of
these types of employees. She has a bachelor's degree in English
literature and a master's degree in business administration.
(Defs.' Mem. in Supp. of Mot., Ex. C, Verkuilen Dep. at 7.) She
had never taken a computer-science class or any classes in software
writing or coding. (Id. at 235.) And there is no evidence that
she gained skills similar to computer systems analysis, computer
programming, or software engineering at any point in her career.
The fact that she was a liaison for clients experiencing software
problems does not mean that she had the types of particularized
computer skills required for this exemption. Indeed, her position

- 12 -

did not require a degree in the computer field; rather, it required a bachelor's degree with a background in marketing or market research.

There is no evidence that plaintiff was an exempt computer employee. Nonetheless, because there is no genuine issue that she was an exempt administrative employee, defendants' motion will be granted and plaintiff's motion will be denied.

<u>**CONCLUSION**</u>

For the reasons explained above, plaintiff's motion for summary judgment [40] is denied, and defendants' motion for summary judgment [43] is granted.

DATE:      May 19, 2010

ENTER:     _____

John F. Grady, United States District Judge